# HARWOOD REIFF LLC

370 Lexington Avenue, Suite 505
New York, New York 10017
(212) 661-0750 (office)
(646) 365-3332 (fax)
www.harwoodreiff.com

Donald A. Harwood
Direct Phone: (646) 957-2455
dharwood@harwoodreiff.com

Simon W. Reiff
Direct Phone: (347) 674-9797
sreiff@harwoodreiff.com

July 21, 2017

**BY ECF**

Hon. Lorna Schofield, U.S.D.J.
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   *Bimo Development LLC v. Urban Standard Development LLC*, No. 17 Civ. 3274 (S.D.N.Y.)

Dear Judge Schofield:

      I represent defendant, Urban Standard Development LLC ("Defendant" or "USD"), in the above action. I write under Your Honor's Individual Practice § III(A)(1) to request a pre-motion conference, or alternatively for the Court to set a briefing schedule, ahead of filing a Rule 11 motion for the reasons set forth below.

      According to the Complaint, Plaintiff's exclusive licensee, Urban Standard General Contracting LLC, is a general contractor offering construction services to members of the public under the service mark "Urban Standard". *Id.* ¶¶ 7, 13. In relevant part, Plaintiff alleges that Defendant is liable for trademark infringement and deceptive consumer practices in that: (i) Defendant uses the marks URBAN STANDARD, URBAN STANDARD DEVELOPMENT, and URBAN STANDARD CAPITAL ("Defendant's Marks") to advertise, market, offer to render, and render construction and contracting services (*see*, *e.g.*, *id.* at ¶¶ 36-55, 67, 74, 75, 83, 84, 91, 92, 100, 101); (ii) Defendant advertises, markets, offers to render, and renders such services in connection with Defendant's Marks "to consumers interested in building or renovating residential and commercial spaces" (*id.* ¶ 43; *see also*, *e.g.*, *id.* ¶¶ 45, 49, 55, 74, 75, 84, 91, 92, 100); (iii) Defendant's website advertises that Defendant offers "construction management" services" (*id.* ¶ 39 & Ex. "C" thereto); and (iv) Defendant is misleading and deceiving consumers by "palming off" its services as those of Bimo's (*id.* ¶¶ 92-93, 100-101) (collectively, the allegations in subparagraphs (i) through (iv) above are referred to herein as the "Frivolous Allegations").

      Each of the Frivolous Allegations is utterly untrue. As Defendant's attorneys have repeatedly stressed to Plaintiff's counsel both before and after commencement of this litigation, Defendant is the portfolio manager of an affiliated private equity fund that invests in real property interests in New York City through a series of single-purpose LLCs. Defendant and its affiliates thus acquire, manage, lease, finance, and sell real property interests. Critically, however,

Harwood Reiff LLC

Hon. Lorna Schofield, U.S.D.J.
July 21, 2017
Page 2 of 3

Defendant does *not* provide (and has never provided) construction and contracting services at all— not even to its own affiliates, let alone to the public. Defendant does not hold itself out as a general contractor or hire subcontractors, as the Complaint speciously maintains (*id.* at ¶¶ 40-41). Indeed, when construction or renovation services are required at properties under Defendant's purview, Defendant's affiliates hire and pay unaffiliated third-party contractors to perform such services. Defendant does have an affiliated property management company, PAD Management LLC, which provides maintenance services for the subject properties, but any such services rendered (and management and construction are not the same thing) are performed under PAD Management's name, without using the "Urban Standard" moniker. In any event, all work— construction, renovation, maintenance, or otherwise— is performed solely on the account (and for the benefit) of Defendant's affiliates, not for consumers or members of the public. Defendant's Marks are never used or displayed on any construction or renovation sites. Unlike Plaintiff's website, which contains a "Hire Us" link for members of the public to inquire about hiring Plaintiff as a contractor, Defendant's website solicits communications *solely* from owners of real property who might wish to sell their property or originate a commercial loan with Defendant.[1] Defendant does not sell construction or contracting services to members of the public and never has. If a consumer were to contact Defendant to request such services, Defendant would turn that person away. Indeed, Defendant does not have any customers at all.

Despite this, the Complaint falsely alleges that "[c]onsumers who become aware of, purchase or consider purchasing services from Defendant are likely to believe that such services originate from or are associated with, connected to, affiliated with, or related to Bimo" (*id.* ¶ 49); that Defendant "palms off" its alleged construction and renovation services as those of Plaintiff (*id.* ¶ 92); and, most shocking of all, that "***Defendant has marketed and continues to mark[et] its construction and renovation services*** in connection with its US Infringing Marks ***including to Bimo's consumers and potential consumers***" (*id.* ¶ 45) (emphasis added).

Each of the Frivolous Allegations is materially false, lacks evidentiary support, and will not "likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3). Accordingly, by a 21-day "safe harbor" letter sent to my adversary on June 23, 2017 under Rule 11(c)(2), enclosing a notice of motion and setting forth in detail the grounds for a motion,[2] I demanded that Defendant withdraw the Frivolous Allegations by July 14, 2017, which was also the deadline to file an amended complaint without leave of the

---

[1] In no way does Defendant's website discuss "its ׅconstruction management' services" as falsely claimed in the Complaint (*id.* at ¶ 39 & Ex. "C" thereto). The words "construction management" appear *only* in a description of one of Defendant's principals' real estate *experience*, not as services that are being offered to the public.

[2] No further supporting papers, beyond the notice of motion and letter setting forth the alleged sanctionable conduct, need be served to comply with Rule 11(c)(2)'s 21-day safe harbor provisions. *See Star Mark Mgmt. Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176-77 (2d Cir. 2012).

Harwood Reiff LLC

Hon. Lorna Schofield, U.S.D.J.
July 21, 2017
Page 3 of 3

Court.  On July 14, 2017, Plaintiff's counsel conclusorily replied without explanation that the Complaint satisfies Rule 11 and therefore would not be amended or withdrawn in any respect.

"A pleading violates Rule 11(b)(3) where 'after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact.'"  *In re Australia and New Zealand Banking Group Ltd. Securities Litigation*, 712 F.Supp.2d 255, 263 (S.D.N.Y. 2010), quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002).  "An argument contains a frivolous legal position… if, under an 'objective standard of reasonableness,' it is clear… there is no chance of success… ."  *Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994) (citations omitted).  A Rule 11 motion must be "served promptly after the inappropriate paper is filed, and if delayed too long, may be viewed as untimely."  Fed. R. Civ. P. 11 Advisory Committee Notes (1993 amendment); *see*, *e.g.*, *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003).

Moreover, it is well settled that for purposes of the Lanham Act, "services must not be solely for the benefit of the performer; the services must be rendered to others[.]"  *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 138 (2d Cir. 1999).  Provision of services to a defendant's own "branches or affiliates" does not constitute "services" within the meaning of the Lanham Act.  *Id.*; *see In re Canadian Pacific Ltd.*, 754 F.2d 992 (Fed. Cir. 1985).

The Frivolous Allegations are at the heart of Plaintiff's case, and no competent attorney could reasonably believe them to be well-grounded in fact.  No consumer ever purchased anything from Defendant, which never provided or offered to provide construction or renovation services to anyone—not even its own affiliates.  Defendant's fund management services are solely provided to benefit Defendant's own affiliates and investors, not any member of the public.  Plaintiff's case is doomed for several reasons, including that Defendant has never rendered "services" for Lanham Act purposes under *Morningside Group*.  To avoid inevitable dismissal, Plaintiff and its attorneys apparently chose to manufacture the Frivolous Allegations, which, while completely false, nonetheless will impose significant costs on Defendant to litigate.

Defendant thus asks this Court to schedule a pre-motion conference or alternatively to set a briefing schedule on Defendant's contemplated Rule 11 motion.  Plaintiff and its attorneys could not possibly have evidence to support the Frivolous Allegations in the Complaint, nor could they reasonably anticipate that such evidence is "likely" to emerge if given the opportunity to conduct discovery.  They therefore should be ordered to pay sanctions, including Defendant's legal fees, when the Court inevitably reaches the same conclusion.

Thank you in advance for your consideration of this application.

Very truly yours,

 */s/ Simon W. Reiff*
Simon W. Reiff